## WARD BRACK v. SAMUEL WOOD.

Action of revendication for a slave.

The object of the possessory action is to enable the person clothed with possession to maintain that possession, and compel his adversary to exhibit and recover on his title.

The rule in Art. 44 C. P., that plaintiff must recover on strength of his own and not the weakness of his adversary's title, applied.

The testimony of witnesses as to identity of a slave, when the slave is before them, preferable to that of witnesses who describe him from memory only, though the presumption be strong that the latter testify as to the same negro.

The plaintiff to a petitory action must not only make his case probable, but legally certain. *In pari casu potior est conditio possidentis.*

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Wolfe & Singleton*, for plaintiff. *Ogden & Chilton*, for defendant.

MERRICK, C. J. This is an action of revendication brought to recover a slave.

It has been made a question whether the circumstances of the case did not throw the burden of proof upon the defendant, he having taken the slave out of the plaintiff's possession a short time previous to the commencement of this suit. The very object of the possessory action is to enable the person clothed

with possession to maintain that possession and compel his adversary to exhibit and recover upon his title.

The plaintiff seems to have supposed that he had not possession which would enable him to bring the possessory action against the defendant who resumed the possession of the slave after an interval of only seven months.

We see no reason to introduce an exception in this case to the rule expressed in Article No. 44 of the Code of Practice, which has been recognized almost as often as there have been petitory actions tried, viz: that the plaintiff in this kind of action must recover upon the strength of his own title and not upon the weakness of that of his adversary.

It will be unnecessary in this case to consider the objections raised as to the introduction of testimony.

The main difficulty in this case arises from a question of identity as to the slave, whether the testimony of both plaintiff's and defendant's witnesses all point to the same object, or whether or not there have not really been two negroes so similar in appearance as to bear the same description, both of which have been in the possession of plaintiff and his vendors, and one only in the possession of the defendant.

The testimony of defendant's witnesses has this advantage over those of plaintiff; they had the slave before them when they testified, and they speak positively as to the identity of the negro. On the other hand, the plaintiff's witnesses describe a negro with such marks as to create a very strong presumption that they testify to the same negro, although they had not seen him for some months, and as to some of the witnesses, perhaps years previous to the commencement of the suit.

The defendant's testimony establishes these facts, viz: that the identical negro which he has in possession was in the possession of one *McDonald* as owner from 1836 to 1840 and 1841, when *McDonald* left Natchez; that in 1848 he was lodged in jail as a runaway; that he was seized under an execution at the suit of one *Izad* as *McDonald's* property, and bought by the defendant, on the 5th day of June, 1848, for $475; that from that period the slave remained in defendant's possession, on his plantation in Louisiana, up to October, 1851, when he ran away, and that the defendant recovered his possession of the negro in August, 1852, by taking him from the steamboat Florida, where he had been hired.

The plaintiff's testimony proves that, in 1839, a negro boy, answering to the description of the one in controversy, was lodged in jail in Helena, Arkansas, where he remained until December, when a man by the name of *Ervart* presented himself, with a written title from one *John Weymouth*, dated September, 1838, identified the negro as his property, and sold him the same day to *Miller Irvine* for $810. In 1844 *Irvine* sold to *Wm. Polk* for ——. On the 19th day of March, 1846, *Polk* sold to *John Trigg*. About February, 1848, the slave absconded. In October, 1851, *Trigg* regained a negro, which plaintiff's witnesses identify as the one runaway, having taken him out of the jail in Gallatin, Mississippi, where he had been lodged as a runaway. The slave absconded again in January, 1852, and having been recaptured the same month, he was sent to New Orleans, and sold as the property of *John Trigg*, at auction, and bought by the plaintiff. Plaintiff had hired the slave upon the steamboat Florida, from which the defendant took the slave which he possesses as owner. It will be observed that neither plaintiff nor defendant exhibit in their vendors

BRACK
*v.*
WOOD

any title except possession.  The plaintiff's possession is traced back to 1889, that of the defendant to 1836.  Who had been the previous owner of the slave or slaves is not shown.

It is possible, notwithstanding the positive character of the testimony of the witnesses and their number, that the slave which *McDonald* had in his possession from 1836 to 1840 was the same which *Ervart* sold to *Irvine*, and that there is a mistake of the witnesses in regard to the dates.  But were this so, still the plaintiff fails in his proof, because he would then claim through *McDonald*, and having failed to show title from *McDonald*, his action fails.

It is not enough for the plaintiff in the petitory action to make his case probable, he must make it legally certain.

So far as it concerns the testimony in this case, to say the least of it, that of the defendant is as cogent and consistent as that produced by the plaintiff.  *In pari casu potior est conditio possidentis.*

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that there be judgment in this case against the demand of the plaintiff and in favor of the defendant, and that the plaintiff pay the costs of both courts.